3118-139 (PJR)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE TERRELL and ANDREW TERRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No: 08 C 2430 |
| | ) | |
| PETER DIANGI, Individually and as Employee or Agent of Silver Lake Country Club, Inc. and as Police Officer of Orland Park, a municipal corp., SILVER LAKE COUNTRY CLUB, INC. and VILLAGE OF ORLAND PARK, a municipal corp., | ) ) ) ) ) ) ) | Judge Marovich Magistrate Judge Cox |
| Defendants. | ) | |

**PETER DIANGI'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

NOW COMES the defendant, PETER DIANGI, by and through his attorneys, LITCHFIELD CAVO LLP and in support of his Motion for Summary Judgment, states as follows:

**I.     INTRODUCTION**

Plaintiffs, George Terrell and Andrew Terrell, sued Peter DiAngi, individually and as employee or agent of Silver Lake Country Club, Inc. and as police officer of Orland Park, as well as, the Village of Orland Park, a municipal corporation. Plaintiff has asserted that Peter DiAngi was employed by both Silver Lake Country Club as a security guard, as well as with the Village of Orland Park as a police officer. Although, Peter DiAngi held both primary and secondary employment on March 18, 2006, he was working as a security guard for Silver Lake Country Club at the time of the incident alleged in plaintiffs' complaint and did not, under any circumstance, act under color of law.

II.    **FACTS**

On March 18, 2006, Peter DiAngi was employed by the defendant Silver Lake Country Club, Inc., as a security guard. (See defendant's 56.1(a) statement at 1). His duties on that date included keeping the premises secured, checking for illicit drugs, and under age drinking. (*Id.* at 4). On March 18, 2006, Peter DiAngi observed 2 guests at the Schultz-Terrell wedding reception who appeared to be engaging in under-age drinking. He approached the table and directed the under age drinkers to return their drinks to the bar. (*Id.* at 34-35). Subsequently, Jason Terrell brought additional alcoholic drinks to the table. (*Id.* at 40-45). DiAngi tried to find Mr. Terrell in order to speak with him about providing alcohol to under-age guests. (*Id.* at 40-47). He approached Mr. Terrell in the bathroom of the country club. (*Id.* at 46). After DiAngi identified himself as a Silver Lake Country Club security guard, Mr. Terrell became belligerent, abusive and battered him. (*Id.* at 47-51). In response to this conduct, DiAngi did not identify himself as an Orland Park police officer, did not announce his office, but instead told the plaintiff that he worked as security at the banquet hall and wanted to speak to him back in the banquet room. (Paragraph 12, 48, and 52 of defendant's 56.1(a) statement). In an effort to defuse the situation, DiAngi attempted to walk Terrell down the hallway. (*Id.* at 19). Terrell then pushed DiAngi at least twice, and the second push caused him to fall backwards and make contact with a wall. (*Id.* at 20). DiAngi then told Terrell that he had battered him and Terrell responded with a stream of expletives. (*Id.* at 21).. DiAngi only identified himself as a police officer after Terrell threw him up against the wall. (*Id.* at 22). Subsequently, other guests from the wedding, including Andrew Terrell, also joined in the melee and battered Peter DiAngi. (*Id.* at 23).

As he was the victim of a battery, DiAngi filed criminal complaints against Andrew Terrell, George Terrell, and Jason Terrell for battery and resisting arrest. (*Id.* at 61).

2

Peter DiAngi sustained injuries in the incident on March 18, 2006. As a result of his injuries, he filed a claim with the workers' compensation carrier for Silver Lake Country Club. (*Id*. at 17). On March 18, 2006, Silver Lake Country Club paid DiAngi for his services as a security guard. (*Id*. at 18). At no time was he compensated on March 18, 2006 by the Village of Orland Park. At no point was he under the direction and control of the Village of Orland Park or its police department. (*Id.* at 25).

DiAngi was not wearing his uniform, department badge, or any insignia or patches which identified him as a member of the Orland Park Police Department. (*Id. *at 24).

### III. STANDARD OF REVIEW

Summary judgment is proper if the record shows there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FRCP 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. 88249-50. In deciding a motion for summary judgment, the court must view all evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-movant's favor. *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990). To be material, a fact must be outcome determinative under the substantive law governing the motion. *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000). A "genuine issue" exists when the party opposing the motion for summary judgment serves and files, pursuant to Local Rule 56.1, a concise statement outlining the material facts that require denial of summary judgment, supported by citations to the evidentiary materials that support those denials. FRCP 56(c). While the party seeking summary judgment bears the initial burden

3

of proving that there is no genuine issue of material fact, the non-moving party cannot rely upon the pleadings alone, but must use the evidentiary tools outlined above to identify the material facts which suggest that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

### IV. OFFICER DIANGI WAS NOT ACTING UNDER COLOR OF LAW WHEN HE ARRESTED AND OTHERWISE INTERACTED WITH THE PLAINTIFF

Section 1983 affords a plaintiff the right to bring a civil action for the deprivation of constitutional rights under color of law. 42 U.S.C. Section 1988. A defendant in a Section 1983 suit acts under color of law when he abuses the position given to him by the State. *West v. Atkins*, 487 U.S. 482, 50, 108 S.Ct. 2250, 2255, (1988). As a general rule, a government employee who acts in his official capacity or exercises his responsibilities pursuant to state law acts under color of law. *West*, 487 U.S. at 50, 108 S.Ct. at 2255. Police officers' acts are not under color of law unless they are related to the performance of police duties. *Gibson v. Chicago*, 910 F.2d 1510, 1516-19 (1990). As a result, a defendant's employment as a police officer does not transform all of his actions into acts under color of law. *Gibson*, 910 F.2d at 1516. Conversely, whether a defendant was on or off duty does not resolve the question of whether he acted under color of law. *Gibson*, 910 F.2d at 1517. The essential inquiry is whether the defendant's actions related in some way to the performance of a police duty. *Gibson*, 910 F.2d at 1517. Mere assertion that one is a state official or state officer does not necessarily mean that one acts under color of law. *Gibson*, 910 F.2d at 1516.

Determining whether a police officer was acting under color of state law rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acted in accordance with his or her duty. *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1994). Seventh Circuit precedent teaches that the fundamental question is whether the

4

officer's actions related in some way to performance of police duty. *Gibson*, 910 F.2d at 1517. The district court's analysis "should turn largely on the nature of the specific acts the officer performed rather than whether he was actively assigned at the moment to the performance of police duties." *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995). Acts of officers in the ambit of their personal pursuits are usually excluded. *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 1040 (1944). In addition, while law enforcement officers are employed by the state and are empowered to make arrests, whether on or off duty, not all of their actions are conducted under color of state law. *Gibson*, 910 F.2d at 1516. See also, *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989).

Applying the principles set forth in *Gibson* and its following cases, it is obvious that DiAngi was not performing police duties when he arrested the plaintiff. It is undisputed that Peter DiAngi has been employed as a security guard for Silver Lake Country Club since 2003. (See paragraph 1 of defendant's 56.1(a) statement). As a security officer working at Silver Lake, he would not wear his uniform and did not consider himself to be an officer on duty for the Orland Park Police Department. (*Id.* at 2 and 5). Prior to the incident which is the basis of this lawsuit, DiAngi never placed anyone under arrest while working at Silver Lake. (*Id*. at 8). On the date of Terrell's arrest, DiAngi was dressed in black pants, dress shoes and a sport coat. (*Id.* at 9*)*. His responsibilities as a security officer included securing the property, checking all areas of the interior, checking for illegal drug use, under-aged drinking, and handling any problems that may arise during banquets and similar functions. (*Id.* at 4).

DiAngi was assigned to the Schultz-Terrell reception which took place in March of 2006. (*Id.* at 26). As a security officer assigned to this particular reception, his duties included ensuring that there was no under-aged drinking, illegal drug use and to prevent any brawls or

5

fights from breaking out. (*Id.* at 27). With respect to under-aged drinking, DiAngi observed the wedding guests and if anyone looked under-age, he would simply ask that person to produce identification. (*Id.* at 28). Upon determining that a guest was engaging in under-aged drinking, he would, as a security officer, warn the under-aged drinker and instruct him or her to return the drink to the bar. (*Id.* at 29). DiAngi was carrying a radio and did so in the event he needed assistance from the police department. (*Id.* at 30).

The crowd at the Schultz-Terrell reception seemed to have a large number of intoxicated subjects who were acting in a boisterous, loud manner. (*Id.* at 31). One of the waitresses working the reception alerted him to possible under-aged drinking at a particular table. (*Id.* at 32). DiAngi observed two wedding guests, a male and a female, sitting at a table and saw that there were numerous glasses in front of them. The glasses appeared to contain alcoholic beverages. (*Id.* at 33). After observing the two patrons drink what appeared to be alcohol, he walked over to the table, asked for identification and asked if they were 21. (*Id.* at 34). DiAngi advised the individuals that they were not allowed to drink at the party unless they were 21 and should not consume any additional alcohol. (*Id.* at 35). He asked them who was providing the drinks, and the two individuals said that they did not know. DiAngi then instructed them to take the glasses back to the bar. (*Id.* at 36). While he spoke with the two under-aged drinkers, he did not tell them that he was an Orland Park police officer. (*Id.* at 37). DiAngi followed up with the bartender and instructed him that these two individuals should not be served any additional alcoholic drinks. (*Id.* at 38). After speaking with the bartender, he observed Jason Terrell walk over to the two at the table and provide the under-aged drinkers with alcoholic beverages. (*Id.* at 39). DiAngi waited to see whether or not the two under-aged drinkers consumed the beverages that Terrell had placed before them. (*Id.* at 40). He walked over to the table and confronted the

under-aged drinkers. (*Id.* at 41). He asked them whether the individual who had given them two new alcoholic beverages had provided them with drinks previously, and they answered affirmatively. (*Id.* at 42). DiAngi then removed the drinks from the table and brought them up to the bar. (*Id.* at 43). He then looked for Mr. Terrell. (*Id.* at 44).

He observed Jason Terrell stumble out of the women's bathroom and concluded that Terrell was intoxicated. (*Id.* at 45). To get Terrell's attention, DiAngi yelled at him to "Come here." (*Id.* at 46). DiAngi walked up to Terrell, told him that he worked at Silver Lake, and wanted to talk to him. (*Id.* at 47). In response, Terrell pushed him back with his hands. (*Id.* at 48). At that point, he did not identify himself as an Orland Park police officer and did not announce any type of public state office. (*Id.* at 49). DiAngi explained that he worked security at Silver Lake and needed to talk to Terrell for being inside the women's bathroom. (*Id.* at 50). He also told Terrell that he wished to speak with him at this particular location because there was a crowd behind him that was loud and boisterous. (*Id.* at 51). He attempted to walk Terrell down the hallway toward the banquet room. As he did so, Terrell pushed him for a second time. (*Id.* at 52). After DiAngi attempted to grasp Terrell's elbow, DiAngi pushed him forcefully, causing him to fall back against the wall. (*Id.* at 53). DiAngi picked himself up and told him that he (Terrell) had just battered him and Terrell responded back that "he didn't give a fuck." (*Id.* at 54). As he was trying to restrain Terrell, his brother, George, walked up and began yelling and screaming and started to grab for DiAngi's hands. (*Id.* at 55). As he was attempting to place handcuffs on Jason Terrell, a portion of the crowd that was watching this incident surrounded DiAngi and began punching and grabbing him. (*Id.* at 56). After being struck two or three times, he decided to arrest Jason for battery. (*Id.* at 57). He identified himself as an Orland Park police officer only after plaintiff threw him up against the wall. (*Id.* at 58).

7

DiAngi was acting in his individual capacity as a citizen employed to provide security services for a country club located in Orland Park. At no point did he show his badge or brandish his service weapon. When Terrell pushed him up against a wall, he was acting as an individual citizen in the employ of a private company. The announcement of his office did not convert his actions to conduct performed under color of law. Had Terrell pushed a private security officer up against the wall, that security officer would have been authorized, by state law, to make a citizen's arrest. (*Id.* at 25). DiAngi's status as a private individual not acting under color of law is underscored by virtue of the fact that he repeatedly observed individuals engaged in law-breaking (under-aged drinking), did not arrest those individuals or otherwise threaten them with arrest. Likewise, even though Terrell repeatedly battered DiAngi, DiAngi attempted to defuse the situation rather than immediately assert authority vested in him as a sworn police officer. From start to finish, his actions have related entirely to the performance of his duties as a private security officer. He observed Terrell violate a number of laws, including providing alcohol to minors. Nevertheless, he did not assert the authority the state vested in him as a sworn police officer and place Mr. Terrell under arrest. Instead, he did everything he possibly could do to defuse the situation and maintain some semblance of order at the reception. Consequently, DiAngi's identification of himself as an Orland Park police officer was incidental and does not render him amenable to suit under 42 USC §1983.

V.    **CONCLUSION**

        For the reasons stated above, Peter DiAngi respectfully requests that this court enter an order granting him summary judgment as to all claims pending against him.

                                                    LITCHFIELD CAVO, LLP.

Patrick J. Ruberry, Esq. (06188844)  
LITCHFIELD CAVO, LLP                By:    /s/ Patrick J. Ruberry  
303 West Madison Street , Suite 300                Attorneys for the defendant, Peter DiAngi  
Chicago, IL 60606-3300  
(312) 781-6677  
(312) 781-6630 fax

## **CERTIFICATE OF SERVICE**

      I, the undersigned, being first duly sworn upon oath, depose, and say that I caused to be served the foregoing Peter DiAngi's Memorandum of Law in Support of Motion for Summary Judgment by electronically filing the same with the Clerk for the U.S. District Court for the Northern District of Illinois, Eastern Division, a copy of which was then forwarded to each attorney of record by CM/ECF on the 3rd day of March, 2009, by mailing a copy via regular U.S. Mail, with proper postage prepaid, to:

    Jason Terrell
    317 Hillside Road
    New Lenox, IL 60451

                                        /s/ Patrick J. Ruberry
                                        Attorneys for the defendant, Peter DiAngi

Patrick J. Ruberry, Esq. (06188844)
LITCHFIELD CAVO, LLP
303 West Madison Street , Suite 300
Chicago, IL 60606-3300
(312) 781-6677
(312) 781-6630 fax