UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW TERRELL, and ) | |
| GEORGE TERRELL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 08 C 2430 |
| v. ) | |
| ) | Judge George M. Marovich |
| PETER DIANGI, SILVER LAKE, ) | |
| COUNTRY CLUB, INC., and ) | |
| VILLAGE OF ORLAND PARK, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

After a dispute at a wedding reception, plaintiffs Andrew Terrell ("Andrew"), the groom, and George Terrell ("George"), the groom's brother, filed in the Circuit Court of Cook County a suit against defendants Peter Diangi ("Diangi"), Silver Lake Country Club, Inc. (the "Club") and the Village of Orland Park ("Orland Park"). Defendants removed the case to this court, because plaintiffs assert claims arising under 42 U.S.C. § 1983. In their first amended complaint, plaintiffs assert 22 counts against defendants. In Counts XI and XXII, Andrew Terrell and George Terrell, respectively, seek to hold defendants Diangi and Orland Park liable under 42 U.S.C. § 1983.

Before the Court are: (1) defendant Diangi's motion for summary judgment on the § 1983 claims; and (2) Diangi's motions to strike. For the reasons set out below, the Court grants the motion for summary judgment and denies the motions to strike.

I.  **Background**

   A.  **Motions to strike and evidentiary objections**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact *with citation to admissible evidence*, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). Thus, for example, the Court deems admitted Diangi's fact ¶¶ 39, 40, 45 and 47. It is not enough at the summary judgment stage for either party to *say* a fact is disputed. The Court considers a fact disputed *only* if both parties put forth *admissible* evidence of his or its version of the fact. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. The Court enforces Local Rule 56.1 with respect to all parties regardless of whether either party moves to strike non-complying portions, because the purpose of the rule is to make *the Court's* job manageable, not to give litigants additional ammunition to use against one another.

Diangi has filed two motions to strike. Diangi wants to strike plaintiffs' response to Diangi's statement of undisputed facts and plaintiffs' statement of undisputed facts. This the Court will not do. The Court need not take the time to strike that which it can simply ignore. Plaintiffs' motions to strike are denied. The Court will, however, rule on the evidentiary objections contained within the motions to strike.

First, Diangi object to portions of Andrew Terrell's affidavit on the grounds that some of the statements contained therein lack foundation. The Federal Rules of Evidence require foundation for testimony. Rule 602 of the Federal Rules of Evidence provides that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *See* Fed. R. Evid. 602. Thus, in an affidavit, a statement that a witness knows something, without statements about *how* the witness knows that something, is not admissible. *See Ward v. First Federal Savings Bank*, 173 F.3d 611, 618 (7th Cir. 1999); *Drake v. 3M*, 134 F.3d 878, 887 (7th Cir. 1998). The Court has ignored the portions of Andrew Terrell's affidavit that lack foundation.

Next, Diangi objects to the admissibility of several documents plaintiffs submitted. Specifically, plaintiffs supported some of their factual assertions with written statements witnesses provided to the police. As Diangi points out, these documents are offered to prove the truth of the matter asserted and are hearsay. Plaintiffs do not include an affidavit authenticating the documents and establishing how they come within an exception (such as the business record exception) to the hearsay rule. Accordingly, the Court sustains Diangi's objections as to the admissibility of exhibits 2, 3, 4 and 5. *See Woods v. City of Chi*, 234 F.3d 979, 988 (7th Cir. 2001) ("Normally, . . . at the summary judgment stage, a party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial.").

Finally, Diangi objects to an exhibit proffered by plaintiffs. The heading on the exhibit is "ORLAND PARK POLICE DEPARTMENT GENERAL ORDER" and the subject is, "OFF DUTY AND EXTRA DUTY EMPLOYMENT." Diangi objects to the exhibit on the grounds that it was not produced by plaintiffs in discovery. Plaintiffs concede that they failed to produce the document in discovery. Rule 37 of the Federal Rules of Civil Procedure says, "[i]f a party

fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Plaintiffs argue that their failure to produce the document is harmless because it must have been in the custody of defendant Orland Park and defendant Diangi worked for Orland Park. Even if the failure were harmless as to Orland Park, the Court does not think the failure is harmless as to Diangi. Plaintiffs have not shown that Diangi actually had the document before plaintiffs attempted to use it as evidence. Diangi, thus, had no opportunity during discovery to determine the authenticity or admissibility of the document. Accordingly, the Court will not consider the document with respect to this motion for summary judgment.

    **B.    Facts relevant to the motion**

The following facts are undisputed unless otherwise noted.

In March 2006, Andrew Terrell and Melissa Schultz ("Melissa") were married. They held their wedding reception at the Silver Lake Country Club. Although Andrew Terrell and Melissa Schultz had several members of their families (including Andrew's brother George, Andrew's cousin Jason Terrell ("Jason") and Melissa Schultz's mother Pamela Schultz ("Pamela")) in attendance at their reception, not every part of the occasion was joyous.

The Club hired a security guard for the reception, as it did for other events. On the evening of Andrew and Melissa's wedding reception, defendant Diangi was working as the security guard at the Club. Diangi had worked part-time as a security guard at the Club since 2003. Working as a security guard at the Club was not Diangi's full-time job.

Diangi's full-time job was as a police officer for the Village of Orland Park. In fact, it was a fellow police officer at Orland Park who told Diangi about the security guard position at

the Club. Before he could accept the job at the Club, Diangi had to get permission from his police chief.

When Diangi arrived at the Club on the evening of Andrew and Melissa's wedding reception, Diangi punched in and checked in with the bartender. Diangi was wearing black pants and a sport coat. Diangi was not wearing his police uniform or any other insignia that would identify him as a police officer. Diangi's duties as a security guard at the Club were to secure the property by checking all areas of the Club's interior, handle problems as they arose, prevent fights and check for illegal drug use and underaged drinking.

At some point during the reception, a waitress alerted Diangi to the possibility of underaged drinking at a particular table. Diangi observed what he thought was underaged drinking by two individuals. Without identifying himself as a police officer, Diangi asked the two for identification and informed them that they could not drink unless they were 21 years of age. Next, Diangi told the bartender not to serve alcohol to the two underaged individuals.

Soon, Diangi saw Jason Terrell provide the two underaged individuals with alcoholic beverages. Diangi approached the two underaged individuals, took their drinks and returned the drinks to the bar. Diangi then went to look for Jason Terrell.

While Diangi was looking for Jason, the bartender told Diangi that men were urinating in the women's bathroom. Diangi headed for the women's bathroom and saw Jason stumble out of the women's bathroom. Diangi walked toward Jason and told him he worked for the Club. Diangi did not identify himself as a police officer. Diangi grasped Jason by the elbow and told Jason he needed to speak to him. Jason pushed Diangi. Diangi, who still did not identify himself as a police officer, told Jason he needed to speak with him at some other location because it was loud where they were. Jason again pushed Diangi, who fell back against a wall.

Facts about the remainder of the evening are sparse, because no party supported all of his version of the facts with admissible evidence. At some point, George Terrell saw Diangi and Jason's interaction and attempted to break it up. At some point, Diangi released pepper spray. At some point, on-duty Orland Park police officers arrived and arrested George and Jason Terrell. Andrew Terrell was arrested later when he turned himself in.

There is one disputed fact (i.e., a fact on which each side put forth admissible evidence and on which the admissible evidence conflicts). Diangi says that after Jason threw him against a wall, Diangi identified himself as a police officer. Plaintiffs put forth admissible evidence that Diangi never identified himself as a police officer.

The Club paid Diangi for his work at the wedding reception. After the reception, Diangi filed a workers' compensation claim against the Club for the injuries he sustained at the wedding reception.

Defendant Diangi has moved for summary judgment on plaintiffs' § 1983 claims.

## II.  Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a

verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

In Counts XI and XXII, respectively, plaintiffs Andrew Terrell and George Terrell pursue their private right of action under 42 U.S.C. § 1983 and assert that Diangi interfered with their constitutional rights at the wedding reception. That statute states, in relevant part, "[e]very person who, *under color of* any statute, ordinance, regulation, custom or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law." 42 U.S.C. § 1983 (emphasis added). Diangi moves for summary judgment on the claims on the ground that he was not acting under color of law at the wedding reception.

Diangi's "mere status as a policeman does not render all of his acts under color of state law." *Gibson v. City of Chi.*, 910 F.2d 1510, 1516 (7th Cir. 1990). Still, a police officer may act under color of law even if he is off-duty. *United States v. Christian*, 342 F.3d 744, 751 (7th Cir. 2003). "Deciding whether a police officer acted under color of state law should turn largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties." *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995). "To convert off-duty status to one where the officer was acting under color of law, the off-duty officer must purport to exercise police authority in some manner, such as flashing a badge, identifying himself as a police officer, placing an individual under arrest, or performing a duty imposed by police department regulations." *Mendez v. Village of Tinley Park*, Case No. 07 C 6498, 2008 WL 427791 at *2

(N.D. Ill. Feb. 14, 2008). A factor in determining whether an off-duty officer is acting under color of law is whether he is displaying items of authority, such as a badge or a gun. *See Pickrel*, 45 F.3d at 1118 (concluding that a plaintiff had stated a § 1983 claim against an off-duty police officer where the plaintiff alleged defendant "was wearing his police uniform and displaying his badge, both signs of state authority. He was wearing his gun, enabling him to enforce his authority. His marked squad car was parked just outside, advertising the presence of a police officer to patrons of the restaurant. [Defendant] arrested [plaintiff] and charged her with, among other things, resisting a peace officer."); *Lyons v. Adams*, 257 F. Supp.2d 1125, 1133 (N.D. Ill. 2003) (concluding that the off-duty officer's actions were "indistinguishable from those of private actors" where the off-duty officers did not wear their police uniforms or display their badges, did not identify themselves as police officers and did not inform plaintiffs that they were under arrest).

In this case, the plaintiffs have failed to put forth admissible evidence sufficient to allow a jury to conclude that Diangi was acting under color of law. It is undisputed that Diangi was wearing black pants and a sports jacket, not his police uniform. Diangi never flashed his badge. The tasks Diangi was engaged in that evening are standard duties of security guards. When the Club's waitress informed Diangi about underaged drinking, he informed the underaged drinkers they could not drink alcohol. When the Club's bartender informed Diangi that men were urinating in the women's bathroom, Diangi investigated and found Jason Terrell stumbling out of the women's bathroom. Plaintiffs insist Diangi never told them he was a police officer. Plaintiffs put forth no evidence that Diangi arrested them. To the contrary, they put forth evidence that on-duty officers arrested George and Jason. Plaintiffs have not put forth evidence

that would distinguish Diangi's conduct from the conduct of a private security guard. It is undisputed that Diangi told Jason that Diangi worked for the Club. Finally, it is undisputed that Diangi was employed by the Club as a security guard and was paid by the Club for his work that night. The Court is not aware of any case that stands for the proposition that every off-duty police officer working as a security guard is necessarily acting under color of law.

Plaintiffs have the burden on summary judgment to put forth admissible evidence that would allow a jury to conclude that Diangi was acting under color of state law. Summary judgment is the "put up or shut up" moment of the lawsuit. *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009). Plaintiffs could have submitted affidavits from plaintiff George Terrell and other witnesses. If witnesses did not wish to sign affidavits, plaintiffs could have deposed them and submitted the transcripts. If they needed more time, plaintiffs could have moved for additional time. Plaintiffs have failed to meet their burden on summary judgment, and Diangi is entitled to judgment as a matter of law on Counts XI and XXII against him.

The Court grants Diangi's motion for summary judgment and grants him summary judgment on Counts XI and XXII.

## IV. Conclusion

For the reasons set forth above, the Court denies defendant Peter Diangi's motions to strike and grants defendant Peter Diangi's motion for summary judgment.

ENTER:

George M. Marovich
United States District Judge

DATED: November 10, 2009